**Beatrice HILLS, Appellant,**

v.

**GREENFIELD VILLAGE HOMES ASSOCIATION, INC., Respondent.**

**Nos. WD 52878, WD 52886.**

Missouri Court of Appeals, Western District.

Oct. 21, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1997.

Application to Transfer Denied Dec. 23, 1997.

Sidney L. Willens, Kansas City, for Appellant.

James H. Ensz, Kansas City, for Respondent.

Before EDWIN H. SMITH, P.J., and SPINDEN and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Beatrice Hills appeals the judgment of the circuit court entered on her claim for breach of covenant against Greenfield Village Homes Association, Inc., respondent, for its alleged failure to provide exterior maintenance and repair for her condominium as required by the Declaration of Covenants, Conditions and Restrictions, hereinafter the agreement, which governed the condominiums in Greenfield Village, including appellant's.

Appellant raises two points on appeal. In Point I she claims that the judgment on her claim was against the weight of the evidence, and that the trial court erroneously declared and applied the law in entering it. In Point II, she claims that the trial court "improperly" denied her claim for consequential damages to her condominium.

Respondent cross-appeals the trial court's judgment on its counterclaim for payment of delinquent association member assessments from appellant and late fees or charges thereon, as well as attorney's fees incurred in its attempt to collect the delinquent assessments. In its sole point on its cross-appeal, respondent claims that the trial court erroneously declared and applied the law in failing to award it any amounts for attorney's fees and/or late fees or charges.

We affirm in part and reverse and remand in part.

### Facts

Beatrice Hills, appellant, is the owner of a condominium unit in the Greenfield Village Subdivision located in Grandview, Missouri. Her unit is located in the middle of nine contiguous units of wood frame construction which share a single roof. When appellant purchased her unit on August 7, 1978, she automatically became a member of Greenfield Village Homes Association, respondent, which is a non-profit organization governed by the Declaration of Covenants, Conditions and Restrictions, the agreement. Article VI of the agreement requires member residents to pay annual and special assessments to the respondent to promote recreation, health, safety, and the welfare of the residents, for the improvement and maintenance of the properties, and for the "maintenance, repair and services listed in Article IX". Article IX of the agreement provides that the respondent will provide exterior maintenance and repair to the common area and each property.

Beginning on July 26, 1982, appellant began complaining of termites invading her unit. The respondent took no action in response to appellant's initial complaints. In

the summer of 1994, termite damage to appellant's condominium was confirmed by an expert examination. Appellant requested respondent to provide protection against the termites, as well as repairing the damage to her unit. Respondent refused to provide protection from the termites, claiming that Article IX of the agreement did not encompass termite prevention services or repair for termite damage. In response to respondent's refusal to provide termite protection for her condominium, appellant withheld her annual assessments which she was required to pay by Article VI of the agreement.

As a result of the termite infestation, appellant claimed that her unit sustained damage to the wood structure, as well as consequential damages to the interior as a result of a leaky roof caused by the termites.

## Procedural Background

On November 26, 1990, respondent obtained a default money judgment against appellant for $1,594.85 for delinquent assessments. On March 4, 1991, respondent terminated appellant's water service based on her refusal to pay the November 26th judgment. On April 1, 1991, appellant paid $845.70 to respondent, and her water service was restored. On January 15, 1992, respondent filed a second lawsuit to recover $1,554.88 in assessments which appellant refused to pay. On June 29, 1992, respondent obtained a second default judgment of $1,829.57 for delinquent assessments plus attorney's fees incurred and late charges accrued. On September 8, 1992, respondent garnished appellant's checking account and received $1,043.98 which partially satisfied the judgments. On May 16, 1994, respondent again terminated appellant's water service for her refusal to pay $1,554.88 in assessments due, attorney's fees incurred, and late charges accrued. On May 27, 1994, the trial court, upon appellant's posting of a $1,000 cash bond, issued a Temporary Restraining Order in favor of appellant which prevented termination of her water service. Appellant then filed an application for an injunction to prevent respondent from terminating her water service.

On June 7, 1994, respondent filed an answer to appellant's application for injunctive relief and a two-count counterclaim for: (1) recovery of delinquent assessments, attorney's fees, late fees accrued based on its ongoing efforts to collect appellant's delinquent assessments, and costs; and (2) declaratory judgment entitling respondent to cut off appellant's water service. Respondent's claim for attorney's fees and late fees was based upon Article VI, Section 8, of the agreement.

On June 9, 1994, the trial court issued a Preliminary Injunction Order in favor of appellant which prevented termination of her water service. On August 22, 1995, appellant filed her "Second Amended Plaintiff's Application for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Amended Answer to Defendant's Counterclaim, Declaratory Judgment Action and Plaintiff's Petition for Damages," which included a prayer for a permanent injunction preventing respondent from cutting off appellant's water service again, a petition for breach of the Restriction Agreement for direct structural damage caused by termite infestation and consequential damages resulting from a leak in appellant's roof caused by the termites, and an answer to respondent's counterclaim. On November 22, 1995, respondent filed an answer to appellant's second amended petition, and the case was then heard in the Jackson County Circuit Court.

On May 6, 1996, the trial court entered its "Findings of Fact, Conclusions of Law and Entry of Judgment." In its conclusions of law, the trial court, *inter alia*, concluded that it was not "unreasonable" for the respondent to interpret the agreement as not requiring it to "repair damage caused by termites or provide termite prevention services" to appellant. It also concluded that the respondent on its counterclaim was not entitled to attorney's fees or late charges as requested.

In its judgment entry, the trial court dissolved the preliminary injunction enjoining the respondent from shutting off appellant's water supply for nonpayment of assessments and declared that respondent was authorized to discontinue water service to her until such time as she was current on her payments.

The trial court further entered judgment for respondent on its counterclaim for delinquent assessments in the amount of $4,223.49 and costs and awarded no late fees or charges or attorney's fees as prayed for by respondent. Finally, on appellant's claim, the trial court did not award her any damages as requested, but ordered the respondent to "commence repair and/or replacement of the siding at the front of the building (Building 30) in which [appellant's] unit is located on or before June 15, 1996, and complete such repair or replacement of the siding within a reasonable period of time thereafter."

This appeal follows.

### Standard of Review

■ In a judge-tried case, our review is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Kirktown Homes Ass'n v. Arey,* 812 S.W.2d 198, 199 (Mo.App. 1991). We will affirm the judgment of the trial court, unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

### Appellant's Appeal

### I.

In her first point, appellant claims in two subpoints that the trial court erred in entering its judgment on her claim against respondent for breach of covenant because: (1) the judgment was against the weight of the evidence; and (2) in entering its judgment, the trial court erroneously declared and applied the law. We will first address the appellant's claim that the trial court erroneously declared and applied the law.

As the basis for her breach of covenant claim, appellant alleged in her amended petition that the respondent failed to take preventive measures to stop termite infestation of her condominium as required under Article IX of the homes association agreement obligating the respondent to provide exterior maintenance, and that as a result she sustained damage which respondent refused to repair, as also required by Article IX. Article IX provides in pertinent part that:

In addition to maintenance upon the Common Area, the Association shall provide exterior maintenance upon each Lot which is subject to assessment hereunder, as follows: paint, repair, replace and care for roofs, gutters, down spouts, exterior building surfaces, trees, shrubs, grass, walks and other exterior improvements. Such exterior maintenance shall not include glass surfaces, screens or patio areas.

Thus, as to appellant's claim, the dispute between the parties centers around the interpretation of the agreement as to whether termite prevention and repair was included in the respondent's obligation to provide exterior maintenance and repair for appellant's condominium.

As to determining whether the respondent was justified in denying a duty under the homes association agreement to provide termite prevention and repair for appellant's unit, the parties agree that the trial court was correct in applying a reasonableness standard. On this issue, the trial court stated in its conclusions of law as follows:

Per the facts found, it is not unreasonable for Defendant Greenfield Village Homes Association to interpret its Restriction Agreement so as to not require it to repair damage caused by termites or provide termite prevention services to Plaintiff Beatrice Hills or others in Greenfield Village subdivision.

In determining that the trial court applied the right standard, the parties primarily rely on *Bennett v. Huwar,* 748 S.W.2d 777, 780 (Mo.App.1988). Their reliance is misplaced.

■ *Bennett* and like holdings cited by the parties all dealt with "restrictive" covenants. In these cases, the issue was whether the entity involved had acted reasonably in enforcing a restrictive covenant. Such is not the case here. Our case deals with an "affirmative" covenant. An affirmative covenant, as opposed to a restrictive one, does not restrict the use of the land in question, but instead, imposes a duty on a party to the agreement to perform an affirmative act. *H.B.I. Const., Inc. v. Graviett,* 903 S.W.2d 653, 655–56 (Mo.App.1995); *Lake Wauwanoka, Inc. v. Spain,* 622 S.W.2d 309, 312 (Mo. App.1981).

In this case, pursuant to the homes association agreement, respondent, in return for appellant's promise to pay her assessments, promised, *inter alia*, to provide exterior maintenance and repair for her condominium unit. This then was an affirmative covenant. As such, a determination of whether this affirmative duty of respondent included an obligation to provide termite prevention, as alleged by appellant, would involve interpreting Article IX of the homes association agreement pursuant to principles of contract law. It would not be a matter of determining whether the respondent had acted reasonably in deciding it did not have to provide termite prevention under the homes association agreement. In interpreting a contract, we do not simply look to determine whether a party to it has acted reasonably. Rather, we look to determine what the contract mandates by its terms, provided it is unambiguous; and if it is not, we resort to rules of contract construction. *Lake Wauwanoka, Inc.*, 622 S.W.2d at 313.

From the record before us, it is clear that the trial court erroneously declared and applied the law in entering its judgment on appellant's claim for breach of covenant. And, although it is true that we are to affirm the judgment of the trial court, if it can be affirmed on any theory of law in accordance with the law, *Kirktown Homes Ass'n*, 812 S.W.2d at 199; *Kopp v. Franks*, 792 S.W.2d 413, 419 (Mo.App.1990), we cannot do so here.

The record here was developed based on an erroneous belief by the trial court and the parties as to the applicable law. As such, the record is wholly inadequate for us to provide any meaningful appellate review. *Woolridge v. Woolridge*, 915 S.W.2d 372, 380 (Mo.App. 1996) (holding that the record must properly frame the legal and factual issues such that meaningful appellate review is possible). We, therefore, must reverse and remand for a new trial on appellant's claim against respondent for breach of covenant.

**II.**

In her second point, appellant claims that the trial court erred in not awarding her a judgment for consequential damages to her condominium for respondent's breach of Article IX of the homes association agreement in failing to provide termite prevention. Because in Point I, *supra*, we reverse and remand for a new trial as to appellant's claim for breach of covenant, which would include her claim for consequential damages, we need not address this point, in that it will be addressed in the new trial.

**Respondent's Cross–Appeal**

**III.**

In its sole point on its cross-appeal, the respondent claims that the trial court erred in awarding it a judgment on its counterclaim against appellant for $4,223.49[1] for delinquent assessments, but not awarding it late fees or charges thereon and attorney's fees incurred in its efforts to collect them. In this regard, the respondent prayed for a judgment for delinquent assessments, interest, late fees ($450), attorney's fees, and costs. As to attorney's fees and late fees or charges, the trial court, in its Conclusions of Law, stated, "[p]er the facts and circumstances of this case, Defendant Association is not entitled to attorneys fees or late charges." The trial court provided no reasoning as to the denial of late fees or charges and attorney's fees.

We will first address the issue of the trial court's denial of what the respondent characterized in its counterclaim as "late fees" and in its brief as "late charges." Section 8 of Article VI of the homes association agreement deals with the "Effect of Nonpayment of Assessments: Remedies of the Association." It states in pertinent part:

Any assessments which are not paid when due shall be delinquent. If the assessment is not paid within thirty (30) days after the due date, the assessment shall bear interest from the date of delinquency at the rate of 8 percent per annum, and the Asso-

---

1. Although in its judgment on respondent's counterclaim the trial court awarded respondent $4,223.49, in its "Conclusions of Law," it concluded that the appellant was obligated to respondent in the principal amount of $4,469 for failure to pay assessments and for interest in the amount of $649.49.

ciation may bring an action at law against the Owner personally obligated to pay the same, or foreclose the lien against the property, and interest, costs, and reasonable attorney's fees of any such action shall be added to the amount of such assessment.

This section provides, *inter alia,* for interest on delinquent assessments, but does not provide for late fees or charges nor does any other section of the agreement. Consequently, although the trial court concluded that interest of $649.49 was owed by the appellant on the delinquent assessments pursuant to the agreement, respondent was not entitled to late fees or charges under the agreement. Further, absent an agreement for the imposition of late fees or charges on delinquent assessments, respondent cites no authority nor can we find any for their unilateral imposition. Thus, because there was no basis for the trial court to award respondent "late fees or charges" on appellant's delinquent assessments, we cannot convict it of error on this basis.

■ We next turn to the issue of the trial court's failure to award respondent attorney's fees for collection of the appellant's delinquent assessments.

Missouri courts have historically adhered to the 'American rule' that, with certain exceptions, litigants bear the expense of their own attorney fees. Ordinarily, any exceptions fit into one of four categories: recovery of fees pursuant to contract, recovery provided by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and, occasionally, reimbursement when ordered by a court of equity to balance benefits.

*Harris v. Desisto,* 932 S.W.2d 435, 448 (Mo. App.1996) (citing *Nix v. Nix,* 862 S.W.2d 948, 952 (Mo.App.1993)). "If a contract provides for the payment of attorney's fees and expenses incurred in the enforcement of a contract provision, the trial court must award them to the prevailing party." *Magna Bank of Madison County v. W.P. Foods, Inc.,* 926 S.W.2d 157, 162–63 (Mo.App.1996). Here, respondent contends that it was entitled to an award of attorney's fees pursuant to the homes association agreement. We will re-

view the trial court's failure to award attorney fees to respondent for an abuse of discretion. *Leone v. Leone,* 917 S.W.2d 608, 616 (Mo.App.1996). "An abuse of discretion is established only when the award [or lack of an award] is so 'clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.'" (citation omitted) *Id.*

On the issue of attorney's fees, the appellant admits that: (1) she owed the delinquent assessments; (2) such assessments were withheld by her after the date they were due for payment; (3) respondent used an attorney in an effort to collect the assessments; and (4) that the homes association agreement permits recovery of attorney's fees in the event suit has to be brought to recover any delinquent payments. However, she contends that she was justified in withholding the assessments because of respondent's breach of its covenant to provide termite prevention and repair, which we discussed in Point I, *supra;* and therefore, if we found in Point I that respondent had breached the agreement as appellant alleged, respondent could not recover its attorney's fees.

■ Because the homes association agreement provides for the payment of attorney's fees in the event suit was filed by respondent to collect delinquent assessments, it was an abuse of discretion for the trial court not to have awarded it a reasonable amount for attorney's fees, *Magna Bank of Madison County,* 926 S.W.2d at 162–63, unless there is merit to appellant's contention in opposition to such an award, as stated, *supra.* Inasmuch as we are reversing and remanding the judgment on appellant's claim and are compelled in any event to reverse the judgment on respondent's counterclaim to the extent it denied it an award of attorney's fees; and, because the record is inadequate to determine on appeal the issue raised by appellant as to an award of attorney's fees, *Woolridge,* 915 S.W.2d at 380, on remand, the trial court is free to consider whether under the applicable law and facts there is any merit to appellant's contention as to why no attorney's fees should be awarded. If none is found, then the trial court is

to award respondent a reasonable amount for attorney's fees.

### Conclusion

As to the judgment on appellant's claim against respondent for breach of covenant, we reverse and remand the cause for a new trial in accordance with this opinion. As to the judgment on respondent's counterclaim against appellant for delinquent assessments, we affirm as to the denial of late fees or charges claimed by respondent on the delinquent assessments, but reverse as to the denial of respondent's claim for attorney's fees and direct the trial court to conduct further proceedings on the issue of awarding attorney's fees to respondent consistent with this opinion.

All concur.