

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

MINDY L. SCHLER and )
CINDY L. SCHLER, )
                     )
                Respondents, )         WD75983
                     )
vs. )         Opinion filed: April 8, 2014
                     )
COVES NORTH HOMES )
ASSOCIATION, )
                     )
                Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF PLATTE COUNTY, MISSOURI
THE HONORABLE ABE SHAFER IV, JUDGE**

Before Division Three: Anthony Rex Gabbert, Presiding Judge,
Victor C. Howard, Judge and Zel Fischer, Special Judge

Coves North Homes Association, Inc. (Association) appeals the trial court's judgment in favor of Mindy and Cindy Schler after a trial de novo on the Schlers' claim against the Association for breach of covenant. The judgment is reversed.

## Background

The Coves North Subdivision in Platte County consists of single-family residences, patio homes, and townhouses. The Appellant Association is the homes association for the subdivision and is charged with operating under and enforcing the terms and conditions of the recorded Declaration of Covenants, Rights and Restrictions of the Coves North Subdivision (Declaration).

The Schlers own a townhouse in the subdivision. They filed an action in small claims court against the Association seeking $2230, the cost to repair the concrete patio in front of their townhouse plus costs. The small claims court entered judgment in the Schlers' favor for $2230. The Association filed an application for trial de novo.

Thereafter, the Schlers filed a first amended petition. They alleged that the Association breached the terms of the Declaration by failing to repair the patio, porch, and steps on the exterior of their townhouse. They sought $6810, the cost of the repairs. They further requested attorney's fees and punitive damages. The Schlers subsequently filed a second amended petition, which contained the same allegation of breach of covenant but increased the damages they sought to $7600.

At trial, the Schlers presented the testimony of Derick Scarberry, the owner of Maverick Construction. Mr. Scarberry testified that he submitted a $7600 bid to the Schlers to repair their front patio, porch, and steps. Mr. Scarberry stated that when he inspected the Schlers' property, he observed that the patio was sinking and determined that the problem was caused by drainage issues from a hill sloping toward the front of the townhouse and from displacement of water from their roof. He explained that his bid included tearing out and hauling away the existing patio, porch, and steps; repouring the patio, porch, and steps; installing a new French drain to catch runoff from the slope and divert it away from the patio; installing guttering from a downspout on the townhouse to the French drain; repairing vinyl siding by the front porch; and repairing a section of fencing that would need to be disassembled to do the job. Mr. Scarberry further explained that if the patio, porch, and steps were replaced without remedying the drainage issues, the same sinking problems would eventually recur. On cross-examination, Mr. Scarberry

acknowledged that he did not itemize his bid but priced it as a complete project to remedy the patio sinking problem.

Following trial, the trial court entered judgment in favor of the Schlers awarding them $7600. It denied their claim for attorney's fees and punitive damages. This appeal by the Association followed.

## Standard of Review

In a bench-tried case, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Recsnik v. Ret. Time Ins., LLC*, 361 S.W.3d 9, 11 (Mo. App. E.D. 2009)(citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The interpretation of a contract is reviewed *de novo*. *Id.*

## Points on Appeal

The Association raises four points on appeal. First, it claims that the small claims court and the trial court did not have authority over the Schlers' equitable action for specific performance. Second, it contends that the trial court erred in entering judgment in favor of the Schlers because the Declaration contained no provision requiring it to maintain or repair the Schlers' patio, porch, and steps. Third, the Association argues that the trial court erred in granting the Schlers leave to file their first and second amended petitions because the petitions improperly contained additional claims to that heard in the small claims court. Finally, it contends that the trial court erred in allowing the testimony of Derick Scarberry as an expert witness. Because the second point is dispositive, the other points are not addressed.

The Declaration contains two provisions that govern the exterior maintenance and repair of townhouses. The first is Article VI, §13, which applies to all of the owners in the subdivision:

3

Except as specifically provided herein, each Owner at the Owner's sole expense shall keep the exterior of the Owner's building structure, including but not limited to doors, walls, windows, roofs, patios and other improvements, in good maintenance and repair.

Article IV, §3(A)(2)(b) provides an exception to Article VI, §13. In that article, the Association is responsible for certain exterior maintenance of townhouse or duplex living units:

Additionally, the services to be provided to the Owners of townhouses or duplex living units shall include the exterior maintenance of each townhouse or duplex living unit, as follows: paint, repair, replace and care for roofs, gutters, downspouts and exterior building surfaces including the pointing of brick. Such exterior maintenance shall not include glass surfaces.

"A covenant is simply an agreement between the grantor and grantee which requires the performance or the nonperformance of some specified duty with regard to real property, including an agreement to do or not to do a particular act." *Kehrs Mill Trails Assocs. v. Kingspointe Homeowner's Ass'n*, 251 S.W.3d 391, 396 (Mo. App. E.D. 2008)(internal quotes and citation omitted). "An affirmative covenant, as opposed to a restrictive one, does not restrict the use of land in question, but instead, imposes a duty on a party to the agreement to perform an affirmative act." *Id.* (internal quotes and citation omitted). Although Article VI is labeled "Restrictions," §13 does not restrict the Owners' use of their land but imposes an affirmative duty on them to maintain the exteriors of their building structures. Likewise, Article IV, §3(A)(2)(b) is an affirmative covenant imposing an affirmative duty on the Association to provide exterior maintenance of townhouse and duplex living units. *See Hills v. Greenfield Village Homes Ass'n, Inc.*, 956 S.W.2d 344, 348-49 (Mo. App. W.D. 1997)(provision of homes association agreement similar to Article IV, §3(A)(2)(b) was affirmative covenant).

"Principles of contract law apply to the interpretation of an affirmative covenant." *Kehrs Mill Trails*, 251 S.W.3d at 396. *See also Hills*, 956 S.W.2d at 349. The primary rule of contract interpretation under Missouri law is that a court will seek to determine the parties' intent and

4

give effect to that intent. *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. banc 2013). The parties' intent is determined by giving each term its plain, ordinary, and usual meaning. *Id.*; *Kehrs Mill Trails*, 251 S.W.3d at 396. The dictionary is a good source for finding the plain and ordinary meaning of contract language; but the contract's context must be considered in applying the appropriate dictionary definition. *Bailey v. Federated Mut. Ins. Co.*, 152 S.W.3d 355, 357 (Mo. App. W.D. 2004). "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms. The mere fact that the parties disagree over a contract's meaning does not render the contract ambiguous." *Jackson County v. McClain Enters., Inc.*, 190 S.W.3d 633, 640 (Mo. App. W.D. 2006)(internal quotes and citation omitted). If the covenant is clear and unambiguous, the covenant is not subject to rules of construction, and intent is determined from the plain language of the covenant alone. *Kehrs Mill Trails*, 251 S.W.3d at 396; *Hills*, 956 S.W.2d at 349.

In entering judgment in favor of the Schlers, the trial court found that the Declaration does not preclude recovery by the Schlers. The trial court's finding is erroneous. The affirmative covenants in this case are not ambiguous alone or when read together. Article VI, §13 plainly provides that the owners shall keep the exterior of their building structures in good maintenance and repair unless the Declaration specifically provides an exception. Under the covenant, doors, walls, windows, roofs, patios and other improvements are included in the owners' responsibility for the exterior of their building structures, but such responsibility is not limited to those things.

Article IV, §3(A)(2)(b) provides an exception to Article VI, §13 but specifically identifies what exterior maintenance the Association is obligated to undertake. In particular, the

5

article provides that the Association is responsible for "the exterior maintenance of each townhouse or duplex living unit, *as follows: paint, repair, replace and care for roofs, gutters, downspouts and exterior building surfaces including the pointing of brick*." (emphasis added). "As follows" means "as will next be told or explained, " WEBSTER'S NEW WORLD COLLEGE DICTIONARY 549 (4th ed. 2002), or "as will be stated next—used to introduce a specified enumeration, explanation, or command." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 683 (4th ed. 2006). Within Article IV, §3(A)(2)(b), the phrase "as follows" introduces what exterior maintenance the Association is obligated to provide. Unlike in Article VI, §13, under the plain and ordinary meaning of this article, the Association is obligated to maintain only those things specifically enumerated.

It is clear that a patio, porch, and steps are not a roof, gutters, or downspouts. The question is whether they are included in "exterior building surfaces." "Exterior" is defined as "on the outside; outer: outermost [an exterior wall]." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 503 (4th ed. 2002). "Building" is defined as "anything that is built with walls and a roof, as a house or factory; structure." *Id.* at 192. Finally, "surface" is defined as "the outer face, or exterior, of an object." *Id.* at 1440. Based on the dictionary definitions of the individual terms, the plain and ordinary meaning of the phrase "exterior building surfaces" is the outer face of the townhouse structure itself. A patio, porch, and step are not outer faces of the townhouse structure and, therefore, are not exterior building surfaces. They are not covered under Article IV, §3(A)(2)(b).[1] The trial court erred in ruling that the Association has a duty under the

---

[2] In their amended motions, the Schlers alleged that the trial court had previously ruled in a declaratory judgment action that the Association is responsible for exterior maintenance repairs to the townhouses. In that prior proceeding, the Association filed an action for declaratory judgment to determine its obligations under the Declaration to the Schlers and other townhouse owners. In its judgment, the trial court found that the Association is financially responsible for exterior maintenance of townhouses as set out in Article IV, §3(A)(2)(b), setting out verbatim the article. The declaratory judgment did not, however, interpret the article or declare that the Association

Declaration to maintain or repair the Schlers' patio, porch, and steps. *See also Rowan v. Coves North Homes Ass'n*, WD76265, slip op. at 7 (Mo. App. W.D. April 8, 2014)(townhouse deck is not an exterior building surface and, thus, not covered under Article IV, §3(A)(2)(b)). The judgment awarding the Schlers damages is reversed.

 

 

 

VICTOR C. HOWARD, JUDGE

All concur.

---

was responsible for any specific repair. Consequently, the declaratory judgment does not provide any support in this case.